1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 KAJAUNA KENYATTA IRVIN, | Case No.  1:10-cv-01940-AWI-SAB |
| 12           Plaintiff, | ORDER SCREENING PLAINTIFF'S COMPLAINT AND REQUIRING PLAINTIFF |
| 13      v. | EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO |
| 14 JAMES A. YATES, et al. | PROCEED ONLY ON CLAIMS IDENTIFIED HEREIN |
| 15           Defendants. | ECF NO. 5 |
| 16 | |
| 17 | and |
| 18 | ORDER DENYING MOTION FOR SUBSTITUTION OF PARTY |
| 19 | ECF NO. 36 |
| 20 | RESPONSE DUE WITHIN THIRTY (30) DAYS |

21                                          **I.**

22                              **INTRODUCTION**

23        Plaintiff Kajauna Kenyatta Irvin ("Plaintiff") is a state prisoner proceeding pro se in this

24 civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized

25 Persons Act ("RLUIPA").  This case was removed from state court on October 14, 2010.  (ECF

26 No. 1.)  Plaintiff filed his first amended complaint in this action on November 3, 2010.  (ECF

27 No. 5.)

28 / / /

For the reasons set forth below, the Court finds that Plaintiff's first amended complaint states some cognizable claims.  The Court will order Plaintiff either to amend his complaint to cure the deficiencies in his non-cognizable claims or to notify the Court that he does not wish to amend and wishes to proceed only on the claims found to be cognizable in this order.

**II.**

**SCREENING**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### COMPLAINT ALLEGATIONS

Plaintiff names James A. Yates (warden), R. Fisher Jr. (associate warden), P.D. Brazelton (associate warden), K.R. Nash (correctional captain), M.C. Davis (associate warden), Dana B. Allen (correctional captain), A. Walker (correctional captain), Wendy K. Myers (community partnership manager), James D. Bennett (correctional lieutenant), S. Lantz (correctional lieutenant), E. McBride (correctional sergeant), D. McGee (protestant chaplain), E. Guthery (correctional officer) and Does 1-30 (PVSP correctional staff members) as defendants in this lawsuit.  Plaintiff was incarcerated at Pleasant Valley State Prison ("PVSP") at the time of the events described in his complaint.  (First Am. Compl. ¶ 3.)

Plaintiff alleges that he "is a sincere believer in the religion of Islam and actively participates in all religious activities prescribed by Islamic law and consistent with his confinement."  (First Am. Compl. ¶ 19.)  Plaintiff alleges that prison officials denied Plaintiff and other Muslim inmates access to the prison chapel and forced them to conduct religious services outside, failed to provide dietary accommodations for religious celebrations, suspended purchase orders for religious oils and failed to hire a replacement Muslim chaplain.

### A.    Denial of Chapel Access for Religious Services

Plaintiff alleges that he and other Muslim inmates were denied access to PVSP's chapel and were forced to hold religious services outdoors in the yard ever since PVSP's former Muslim chaplain, Michael A. Salaam, left PVSP to work at Avenal State Prison in December 2008.  (First Am. Compl. ¶¶ 48-83.)

Plaintiff alleges that he and other Muslim inmates were denied chapel access for Ta'leem services over twenty times.  (First Am. Compl. ¶ 57.)  The reasons given for denied chapel access were placement on "modified programs" and because no chaplains were available for supervision.  (First Am. Compl. ¶¶ 58-60.)  Plaintiff contends that Defendant Bennett authorized services in the chapel, but other prison officials would deny access or cancel the services.  Defendant McBride denied access to the chapel on a number of occasions.  (First Am. Compl. ¶¶ 60-63.)

/ / /

Defendants Davis and Yates approved the other prison officials' decisions to cancel services.  (First Am. Compl. ¶¶ 61.)  Plaintiff wrote letters Defendants Myers and Bennett to "address the issue," but "no corrective action was taken."  (First Am. Compl. ¶¶ 64-65.)  Plaintiff alleges that Bennett and Doe #4 "refus[ed] to sign memorandums approving access [to the chapel], yet ... granted chapel access to Buddhist inmates ... and Protestant inmates."  (First Am. Compl. ¶ 67.)  Plaintiff alleges that "[t]he denial of chapel access ... began with express, written approval from Defendants Allen and Nash, and continues under Defendants Walker and Davis."  (First Am. Compl. ¶ 68.)

Plaintiff similarly alleges that he and other Muslim inmates were denied chapel access for Jumu'ah prayer services over 17 times.  (First Am. Compl. ¶ 69.)  Defendant McBride denied chapel access for Jumu'ah prayer services on multiple occasions.  (First Am. Compl. ¶¶ 70-72, 78.)  Plaintiff also alleges that Defendant Allen saw McBride force Plaintiff and other Muslim inmates to conduct services outside instead of in the chapel, but did not intervene despite being asked to do so.  (First Am. Compl. ¶ 78.)  Plaintiff complained to Defendants Davis, Bennett, Myers, Nash, Brazelton and Yates about the denial of chapel access, but no corrective action was taken.  (First Am. Compl. ¶¶ 73-74.)  Plaintiff alleges that "[t]he denial of chapel access for Jumu'ah prayer began with the written approval of Defendants Nash and Allen, and continues under Walker, Davis, and Myers."  (First Am. Compl. ¶ 83.)

On January 20, 2010, Defendant Guthery removed Plaintiff and other Muslim inmates gathered in the chapel to observe 'Id-ul-Adha.  (First Am. Compl. ¶ 88.)  On March 5, 2010, Defendant McBride interviewed a Muslim inmate regarding an administrative appeal filed about the incident and concluded that Guthery acted appropriately because no chaplain was available.  (First Am. Compl. ¶ 89.)  McBride's review of the appeal was approved by Defendants Davis and Yates.  (First Am. Compl. ¶ 89.)

Plaintiff alleges that denying chapel access and forcing Muslim inmates to hold religious services outdoors violates Plaintiff's sincerely held belief that his religion mandates indoor religious services.  (First Am. Compl. ¶ 24.)  Moreover, Plaintiff alleges that outdoor religious services exposed Plaintiff and other Muslim inmates to greater risk of contracting Valley Fever.

(First Am. Compl. ¶¶ 39-47.)  Plaintiff alleges that PVSP is located in a Valley Fever "hot spot." (First Am. Compl. ¶ 46.)  Plaintiff alleges that, since 2006, 514 inmates at PVSP have contracted Valley Fever, and approximately 17 inmates and staff members at PVSP have died from Valley Fever.  (First Am. Compl. ¶ 47.)

**B.     Dietary Accommodations**

Plaintiff also contends that prison officials failed to provide dietary accommodations for two annual major Islamic religious observances.  (First Am. Compl. ¶¶ 84-90.)  Plaintiff alleges that dietary accommodations for all religions were discontinued temporarily pursuant to a memorandum issued by Defendant Yates and approved by Defendants Nash and Myers.  (First Am. Compl. ¶¶ 85-86.)  Plaintiff wrote letters to Defendants Yates, Nash, Brazelton and Myers on several occasions about dietary accommodations, but those letters were denied.  (First Am. Compl. ¶ 87.)

**C.     Religious Packages**

Plaintiff alleges that Defendant McGee is one of two full-time chaplains employed at PVSP.  (First Am. Compl. ¶ 91.)  Plaintiff alleges that McGee's duties include supervising chapel services for all religious groups and retrieving "religious special purchase packages" and issuing them to inmates.  (First Am. Compl. ¶ 91.)  Plaintiff alleges that McGee "failed miserably" and was openly hostile toward Muslim inmates, refusing to supervise chapel access and refusing to retrieve packages for Muslim inmates.  (First Am. Compl. ¶ 93.)

On February 3, 2010, Defendant Myers issued a memorandum announcing that orders for religious oils would be suspended and that a standardized list of permitted religious oils would be provided to inmates.  (First Am. Compl. ¶ 96.)  On June 12, 2010, Defendant Fisher denied an administrative appeal about the issue.  (First Am. Compl. ¶ 98.)  On July 19, 2010, Myers issued a memorandum allowing inmates to resume ordering religious oils, but there was no mention of any standardized list from which to order "permitted" religious oils.  (First Am. Compl. ¶ 99.)

**D.     Muslim Chaplain**

Plaintiff complains that PVSP has failed to hire a new Muslim chaplain.  (First Am. Compl. ¶¶ 100-108.)  On March 17, 2009, Plaintiff wrote a letter to Defendant Myers requesting

1   an update on the search for a new Muslim chaplain.  (First Am. Compl. ¶ 101.)  Myers and

2   Defendant Fisher informed Plaintiff that PVSP was working to hire a Muslim chaplain, but there

3   were no applicants, despite the fact that mosques were contacted in Fresno and Oakland about the

4   vacant position.  (First Am. Compl. ¶¶ 102-108.)  Plaintiff complains that Myers and Fisher failed

5   to inform Plaintiff which mosques were contacted.  (First Am. Compl. ¶ 107.)

6                                            **IV.**

7                                      **DISCUSSION**

8        Plaintiff contends that the defendants' actions violated his rights under the First

9   Amendment (free exercise of religion) and Fourteenth Amendment (equal protection) of the

10  United States Constitution.  Plaintiff also contends that the defendants violated RLUIPA.

11       **A.    First Amendment Claims**

12       The First Amendment of the United States Constitution provides that "Congress shall

13  make no law respecting the establishment of religion, or prohibiting the free exercise thereof ...."

14  U.S. Const., amend. I. "Inmates clearly retain protections afforded by the First Amendment ...

15  including its directive that no law shall prohibit the free exercise of religion". O'Lone v. Estate of

16  Shabazz, 482 U.S. 342, 348 (1987) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974); Cruz v.

17  Beto, 405 U.S. 319 (1972)).   In order to merit protection under the Free Exercise Clause, a

18  plaintiff must demonstrate that his/her belief is sincerely held and that his/her claim is rooted in

19  religious belief.  Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citing Malik v. Brown,

20  16 F.3d 330, 333 (9th Cir. 1994)).

21       However, "'[l]awful incarceration brings about the necessary withdrawal or limitation of

22  many privileges and rights, a retraction justified by the considerations underlying our penal

23  system.'"   Id. (quoting Price v. Johnson, 334 U.S. 266, 285 (1948)).  A prison regulation that

24  limits an inmate's right to free exercise of religion is valid if it is reasonably related to legitimate

25  penological interests.  Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).  The Court must

26  examine four factors when determining whether a prison regulation is reasonably related to

27  legitimate penological interests: (1) whether there is a valid rational connection between the

28  prison regulation and the legitimate governmental interest put forward to justify it; (2) whether

there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards and other inmates, and on the allocation of prison resources generally; and (4) whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives.  Id. (quoting Turner, 482 U.S. at 89-90).

Here, Plaintiff alleged that the defendants interfered with his free exercise of religion by forcing Plaintiff to attend outdoor religious services in the yard instead of in the chapel and denied religious dietary accommodations in 2009 and 2010.  Plaintiff also wrote letters to various prison officials complaining about the ongoing denial of chapel access and dietary accommodations, and these prison officials failed to take corrective action.  Plaintiff also alleges that Defendant McGee refused to supervise religious services for Muslim inmates in the chapel, despite the fact that those duties were within McGee's job responsibilities and that McGee supervised religious services for inmates of other religions.  These allegations are sufficient to state cognizable claims against Defendants McBride, Davis, Yates, Myers, Bennett, Allen, Nash, Walker, Brazelton, Guthery, McGee and Does 1-30.

Plaintiff's allegations pertaining to the denial of religious special purchase packages fails to state a claim because Plaintiff failed to allege facts that demonstrate that he has standing.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (in order to have standing to file suit, a plaintiff must suffer an injury in fact, or an invasion of a legally protected interest which is concrete and particularized and actual or imminent).  Plaintiff alleges that inmate purchase orders for religious oil were temporarily suspended between February 2010 and July 2010.  However, Plaintiff does not allege that he attempted or even intended to order religious oils during this time period.  Plaintiff has not alleged any injury from the temporary suspension of religious oil orders to give him standing to raise a claim.  Accordingly, Plaintiff lacks standing to assert any claims based upon the suspension of religious oil orders.

Plaintiff also fails to state any claims pertaining to PVSP's search for a new Muslim chaplain.  Plaintiff alleged that PVSP prison officials attempted to hire a Muslim chaplain, but there were no serious candidates.  These allegations do not constitute a violation of Plaintiff's

1    First Amendment rights because Plaintiff does not allege that any PVSP prison official caused or

2    contributed to the lack of Muslim chaplain candidates.  Plaintiff alleges that PVSP prison officials

3    failed to inform Plaintiff which mosques were contacted during the search for a Muslim chaplain,

4    but such a failure does not constitute a limitation on Plaintiff's right to freely exercise his

5    religious beliefs.  Accordingly, Plaintiff fails to state any claims based upon PVSP's failure to

6    hire a new Muslim chaplain.

7            **B.      Fourteenth Amendment Claims**

8            The Equal Protection Clause requires that persons who are similarly situated be treated

9    alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  If the

10   classification at issue burdens a "suspect class," the Court "must apply strict scrutiny and ask

11   whether the statute is narrowly tailored to serve a compelling governmental interest."  Ball v.

12   Massanari, 254 F.3d 817, 823 (9th Cir. 2001).  Religion is a suspect class.  Id.

13          Plaintiff alleges that Defendant McGee discriminated against Muslim inmates by

14   supervising chapel services for other religious groups but not for Muslim inmates, despite the fact

15   that McGee was responsible for supervising services for all religious groups.  Plaintiff alleges that

16   McGee openly expressed hostility toward Muslim inmates.  Plaintiff states a cognizable equal

17   protection claim against Defendant McGee.

18          However, the remaining allegations raised in Plaintiff's complaint do not raise any equal

19   protection issues.  Although Plaintiff alleges that Muslim inmates were denied chapel access and

20   forced to conduct religious services outdoors, Plaintiff alleges that this was a result from a non-

21   discriminatory policy requiring chapel services to be supervised by a chaplain.  Plaintiff did not

22   allege that Muslim inmates were treated differently from other religious groups or that other

23   religious groups were permitted to worship in the chapel without a chaplain supervising the

24   services.  It would appear, from Plaintiff's allegations, that all religious groups at PVSP were

25   subject to the same requirement that chapel services be supervised by a chaplain.  Similarly,

26   Plaintiff alleges that dietary accommodations were temporarily suspended for all religious groups

27   and not just for Muslim inmates, and that orders for religious oils were temporarily suspended for

28   all religious groups and not just for Muslim inmates.  Plaintiff alleged that PVSP failed to hire a

8

Muslim chaplain because no candidates were available, but Plaintiff fails to allege any facts that support the conclusion that PVSP prison officials conducted their search for a Muslim chaplain differently than they did for other religious groups.   Accordingly, Plaintiff does not state a cognizable equal protection claim based upon these allegations.

### C.   RLUIPA Claims

The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
> (1) is in furtherance of a compelling government interest; and
> (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1.   In order to state a claim for violation of RLUIPA, a plaintiff must demonstrate that the defendants substantially burdened the exercise of his/her religious beliefs. Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005).  If the plaintiff meets that burden, the defendants must demonstrate that "any substantial burden of the plaintiff's exercise of his/her religious beliefs is both in furtherance of a compelling governmental interest and the least restrictive means of furthering that compelling governmental interest."  Id. (emphasis in original). "RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."  Id.  Under RLUIPA, "religious exercise" is defined to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A); Greene v. Solano County Jail, 513 F.3d 982, 986 (9th Cir. 2008).   "In fact, RLUIPA 'bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion.'"  Id. (quoting Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005)).

For the same reasons discussed above with respect to Plaintiff's First Amendment claims, Plaintiff states cognizable RLUIPA claims against Defendants McBride, Davis, Yates, Myers, Bennett, Allen, Nash, Walker, Brazelton, Guthery, McGee and Does 1-30 for denying Plaintiff access to the chapel, forcing Plaintiff to worship outdoors and denying dietary accommodations for Plaintiff's religious celebrations.  See discussion, supra, Part IV.A.  However, Plaintiff fails to

9

1   state any RLUIPA claims based upon the religious packages issue because Plaintiff fails to allege

2   facts establishing standing and Plaintiff fails to state any RLUIPA claims based upon PVSP's

3   search for a Muslim chaplain because Plaintiff fails to allege any facts that show that any prison

4   officials actively interfered with Plaintiff's exercise of his religious beliefs during the search for a

5   new Muslim chaplain.

6           **D.       Claims Against Defendants Lantz and Fisher**

7           Plaintiff names R. Fisher Jr. (associate warden) and S. Lantz (correctional lieutenant) as

8   defendants in this action but fails to allege sufficient facts demonstrating how they caused or

9   contributed to the constitutional violations alleged.  "In a § 1983 action, the plaintiff must . . .

10  demonstrate that the defendant's conduct was the actionable cause of the claimed injury."  Harper

11  v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).   "To meet this causation

12  requirement, the plaintiff must establish both causation-in-fact and proximate causation."  Id.

13  "The inquiry into causation must be individualized and focus on the duties and responsibilities of

14  each individual defendant whose acts or omissions are alleged to have caused a constitutional

15  deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

16          Plaintiff alleges that Fisher denied an appeal regarding the religious oils issue and

17  responded to an appeal regarding the hiring of a Muslim chaplain.  Plaintiff does not allege that

18  Fisher was involved in any of the other incidents.  For the reasons discussed above, the religious

19  oil issue and the Muslim chaplain issue do not support any cognizable claims.  See discussion,

20  supra, Part IV.A and C.  Accordingly, Plaintiff fails to state any cognizable claims against Fisher.

21          Plaintiff's only factual allegation with respect to Lantz's conduct is that "McBride ...

22  intimated to Plaintiff that Defendant Lantz did not want custody staff to supervise chapel access."

23  (First Am. Compl. ¶ 89.)  This allegation is not sufficient to support a plausible claim against

24  Lantz for the violation of Plaintiff's constitutional rights or Plaintiff's rights under RLUIPA.

25  Plaintiff must allege facts that demonstrate that Lantz personally participated in the alleged

26  deprivation of Plaintiff's rights.  Plaintiff has merely alleged that Lantz told another officer that

27  he did not want custody staff to supervise chapel access.  This is insufficient to establish

28  proximate causation.  Accordingly, Plaintiff fails to state any cognizable claims against Lantz.

1          **E.      Motion for Substitution**

2          On August 22, 2012, Plaintiff filed a Motion for Substitution of party seeking to substitute

3     Defendant Lantz for his successor or representative in light of his apparent death during the

4     pendency of this action, as evidenced by the Statement of Fact of Death filed by Defendants on

5     December 7, 2010.  (ECF No. 10.)  Since Plaintiff's complaint does not state any cognizable

6     claims against Lantz, the Court will deny this motion as moot.

7                                                          **V.**

8                                        **CONCLUSION AND ORDER**

9          Plaintiff's complaint states cognizable claims against Defendants McBride, Davis, Yates,

10    Myers, Bennett, Allen, Nash, Walker, Brazelton, Guthery, McGee and Does 1-30 under 42 U.S.C.

11    § 1983 for the violation of Plaintiff's rights under the First Amendment and under RLUIPA.

12    Plaintiff's complaint fails to state any other cognizable claims.

13         The Court will provide Plaintiff with the opportunity to file an amended complaint curing

14    the deficiencies identified by the Court in this order.  Noll v. Carlson, 809 F.2d 1446, 1448-49

15    (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims

16    in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot"

17    complaints).

18         If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only

19    on his claims against Defendants McBride, Davis, Yates, Myers, Bennett, Allen, Nash, Walker,

20    Brazelton, Guthery, McGee and Does 1-30, Plaintiff may so notify the Court in writing, and the

21    Court will issue a recommendation for dismissal of the other claims and defendants, and will

22    forward Plaintiff eleven (11) summonses and eleven (11) USM-285 forms for completion and

23    return.  Upon receipt of the forms, the Court will direct the United States Marshal to initiate

24    service of process.

25         If Plaintiff opts to amend, his amended complaint should be brief.  Fed. R. Civ. P. 8(a).

26    Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's

27    constitutional or other federal rights: "The inquiry into causation must be individualized and

28    focus on the duties and responsibilities of each individual defendant whose acts or omissions are

                                                          11

alleged to have caused a constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).  With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

Plaintiff is advised that an amended complaint supersedes the original complaint.  <u>Forsyth v. Humana, Inc.</u>, 114 F.3d 1467, 1474 (9th Cir. 1997); <u>King v. Atiyeh</u>, 814 F.2d 565, 567 (9th Cir. 1987).  The amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." <u>King</u>, 814 F.2d at 567 (citing <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord Forsyth</u>, 114 F.3d at 1474.  In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Finally, Plaintiff is advised that, should he choose to amend, he may not bring unrelated claims in the same action.

Based on the foregoing, it is HEREBY ORDERED that:

1.     The Clerk's Office shall send Plaintiff a civil rights complaint form;

2.     Within thirty (30) days from the date of service of this order, Plaintiff must either:

      a.     File an amended complaint curing the deficiencies identified by the Court in this order, **or**

      b.     Notify the Court in writing that he does not wish to file an amended

12

complaint and wishes to proceed only against Defendants McBride, Davis, Yates, Myers, Bennett, Allen, Nash, Walker, Brazelton, Guthery, McGee and Does 1-30;

3.   If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order; and

4.   Plaintiff's August 22, 2012 motion seeking substitution of party in light of Defendant Lantz's death is DENIED as moot (ECF No. 36).

IT IS SO ORDERED.

Dated:   **May 9, 2013**

UNITED STATES MAGISTRATE JUDGE