UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAJAUNA KENYATTA IRVIN,<br><br>    Plaintiff,<br><br>        v.<br><br>JAMES A YATES, et al.,<br><br>    Defendants. | Case No.: 1:10-cv-01940-AWI-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S FOURTH AMENDED COMPLAINT<br><br>[ECF No. 50] |

Plaintiff Kajauna Kenyatta Irvin is appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The case was removed from state court on October 14, 2010.

Now pending before the Court is Plaintiff's fourth amended complaint filed March 27, 2014.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

1

1   A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff raises several claims regarding his right to exercise his religion while he was housed at Pleasant Valley State Prison (PVSP). Plaintiff is a sincere believer in the religion of Islam and actively participates in all religious activities prescribed by Islamic law.

Islam is based on five pillars: (1) to testify that there is no diet worthy of worship but Allah (G-d) and that Muhammed is the Messenger of Allah; (b) to perform the five daily prayers at dawn, noon, afternoon, sunset and night; (c) to give of one's weather in charity; (d) to fast each day from dawn to sunset in the holy month of Ramadan; and (e) to perform Hajj (pilgrimage) to the holy city of Mecca at least once in one's lifetime, if financially and physically able to do so.

In Islam, Muslims adhere to two sources of Islamic law: (1) the Holy Qur'an—which Muslims believe to be Allah's words revealed to the Prophet Muhammad (PBUH), and (b) the Sunnah (i.e.,

actions, commands, examples and sayings) of Prophet Muhammad, to which Muslims are commanded in Qur'an, to follow his commands and abstain from what he forbids.

Plaintiff and the majority of PVSP's Facility A inmate Muslim population adhere to the Sunni interpretation of Islamic law, meaning that they follow a strict and, when appropriate, literal interpretation of the Qur'an and Sunnah.

Under Islamic law, Muslims are commanded to perform certain religious rites and rituals as a condition or aspect of one's Faith, such as: (1) to attend the weekly congregational Jum'ah, which replaces the noon prayer on Fridays; (2) to study and learn the religion of Islam; (3) to purify one's body, clothing and places of worship prior to prayers; (4) to fast on holy month of Ramadan; (5) to observe the two major holidays in the Islamic lunar year, which if missed, cannot be made up later dates: Id-ul-Fitr (Festival of Breaking the Fast) and Id-ul-Adha (Festival of the Sacrifice), The Id-ul-Fitr commemorates the end of the Ramadam fast, and Id-ul-Adha commemorates the end of the Hajj season. The Id commences with a congregational prayer, followed by a sermon. Afterwards, Muslims enjoy a feast (of Islamic halal foods) and fellowship; (6) it is an Islamic tradition for Muslims to use scented oils before prayers, and at every gathering (esp., Jumu'ah and Ids); (7) it is also an Islamic tradition for Muslims to wear head coverings (i.e., Muslim men wear a turban (kifayyah) or prayer cap (kufi), and other distinct Muslim identifying artifacts; and (8) to consume only halal (Islamically permissible) foods and drinks.

Islam is not an earth-based religion, meaning that Muslims are not outdoor, nature worshippers. The Prophet Muhammad emphasized indoor worship by constructing a masjid/mosque, and ordered Muslims to do the same. Additionally, he forbade Muslims from worshipping in areas of filth and where there is frequent movement.

Plaintiff was housed at PVSP from January 25, 2006, to January 13, 2011. At the time of his arrival, PVSP had in its employment a full-time Muslim Chaplain named Michael A. Salaam.

In September of 2006, Chaplain Salaam had Plaintiff assigned as the inmate Muslim Clerk. While employed at PVSP, Chaplain Salaam ensured that Plaintiff and other Muslim inmates received weekly chapel access for Ta'leem and Jumu'ah prayer services, as well as approved requests to purchase and receive religious artifacts, which he ensured were issued in a reasonably timely fashion;

3

1  obtained religious significant foods from outside Islamic business for the annual Ramadan and two Id
2  banquets; obtained donations for PVSP's Islamic program; and managed a PVSP trust account with
3  funds allotted by CDCR's religious budget for the benefit of Plaintiff and other Muslim inmates.
4  　　　　While Chaplain Salaam worked at PVSP, Plaintiff and other Muslim inmates had minimal
5  problems receiving adequate religious accommodations.  Indeed, on several occasions Chaplain
6  Salaam had obtained permission from custody supervisory staff to allow Plaintiff and other Facility A
7  Muslim inmates to gather in the chapel for religious services, under custody supervision, during his
8  absences from PVSP.
9  　　　　During Chaplain Salaam's tenure, Plaintiff and other Muslim inmates were allowed to receive
10 chapel access for Ta'leem and Jumu'ah services during program modifications, pursuant to PVSP
11 policy.
12 　　　　On November 12, 2008, Chaplain Salaam submitted PVSP officials written notification of his
13 last day at PVSP on December 5, 2008, to begin working at Avenal State Prison (ASP) on December
14 8, 2008.
15 　　　　Prior to Chaplain Salaam's job transfer, he obtained written approval from then Facility A
16 supervisory staff on November 14, 2008, to allow Plaintiff and other Muslim inmates to gather in the
17 chapel, under custody staff supervision, on Thursdays for Ta'leem and Fridays for Jumu'ah during the
18 interim of PVSP hiring a replacement Muslim Chaplain.
19 　　　　Soon after Chaplain Salaam's departure, Plaintiff and other Facility A Muslim inmates began
20 experiencing problems from PVSP staff regarding chapel access for scheduled religious services,
21 issues concerning staff refusal to sign and promptly return religious service approval lists, and
22 religious special purchase package forms, staff refusal to retrieve and promptly deliver religious
23 special purchase pack forms within a reasonably timely fashion, and staff hindrance on religious
24 accommodations for Ramada and two Ids.
25 ///
26 ///
27 ///
28 ///

## III.

## DISCUSSION

### A.    Free Exercise of Religion

The Free Exercise Clause of the First Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, "forbids all laws 'prohibiting the free exercise' of religion." McDaniel v. Paty, 435 U.S. 618, 620 (1978).  The Free Exercise Clause protects a person's right to hold a particular belief and the right to engage in conduct motivated by that belief.  Emp't Div. v. Smith, 494 U.S. 872, 877 (1990)  "[T]he 'exercise of religion' often involves not only belief and profession [of belief] but the performance of (or abstention from) physical acts…." Id.

"The right to exercise religious practices and beliefs does not terminate at the prison door." McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987) (citing O'Lone v. Shabazz, 482 U.S. 342 (1987) and Bell v. Wolfish, 441 U.S. 520, 545 (1979)).  Moreover, the right to free exercise of religious faith is "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." McElyea, 822 F.2d at 197 (citing O'Lone, 482 U.S. at 348).  Action by prison officials which impacts the inmate's right to free exercise of religion "is valid if it is reasonably related to legitimate penological interests. Id. (quoting O'Lone, 482 U.S. at 348, in turn quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

1.    Denial of Chapel Access

Plaintiff contends that he was denied chapel access for Ta'leem, Jumu'ah, Ramadan, and Id-ul-Adha banquests.

Based on the allegations in Plaintiff's fourth amended complaint, he states a cognizable claim for denial of chapel access from November 2008 to 2011, against Defendants McGee, Allen, Bennett, Huckabay, Myers, McBride, Laniz, Cate, Yates, Trimble, Fisher, Brazelton, Nash, Shimmin, Davis, Walker, and Does 1-25.

2.    Denial of Religious Dietary Foods

Plaintiff contends that on June 8, 2009, Defendants Myers, Nash, Shimmin, and Farkas determined that Plaintiff and other Muslim inmates would no longer be provided with edible dates for

the three major annual Islamic events. After this time, Plaintiff was not provided with appropriate food to meet his religious practices

Based on the allegations in Plaintiff's fourth amended complaint, Plaintiff states a cognizable claim against Defendants Myers, Nash, Shimmin, Farkas, McGee, Allen, Walker, Davis, Brazelton, Trimble, Yates, Fisher, Guthery, McBride, and Laniz.

3.   Denial of Religious Artifacts/Packages

Plaintiff contends that after Chaplain Salaam's departure, he was denied ordering and/or receiving religious packages, including Islamic artifacts such as prayer rugs, kufi caps, dhiker bead, and prayer oils. Based on Plaintiff's allegations, Plaintiff states a cognizable claim against Defendants McGee, Myers, Nash, Trimble, Brazelton, Yates, Cate, and Does 1 through 25.

4.   Failure to Hire Muslim Chaplain

Plaintiff contends that from December 8, 2008 to 2012, PVSP's Muslim Chaplain position remained vacant despite the prison having received a hiring exception and numerous letters of interest from Muslim clergy. However, PVSP hired and approved chaplains and volunteers of other faith groups during this period. Based on Plaintiff's allegations, Plaintiff states a cognizable claim against Defendants Trimble, Brazelton, Fisher, Nash, Shimmin, Myers, and Yates.

**B.   RLUIPA**

To state a claim for violation of RLUIPA, Plaintiff must allege facts plausibly showing that the challenged policy and the practices it engenders impose a substantial burden on the exercise of his religious beliefs; Plaintiff bears the initial burden of persuasion on this issue. Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1124-25 (9th Cir. 2013) (quotation marks omitted).

Under RLUIPA, the government may not impose a substantial burden on a person's exercise of religion unless it: (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest. See 42 U.S.C. § 2000cc-1. The Ninth Circuit has found that a substantial burden on religious exercise "must impose a significantly great restriction or onus upon such exercise. San Jose Christian Coll. V. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004).

As stated above in section A, Plaintiff's allegations regarding the denial of chapel access, religious dietary food, and religious artifacts/packages are sufficient to state a cognizable claim under the RLUIPA against Defendants McGee, Allen, Bennett, Huckabay, Myers, McBride, Laniz, Cate, Yates, Trimble, Fisher, Brazelton, Nash, Shimmin, Davis, Walker, Farkas, Guthery, and Does 1-25.

### C. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class. Hartmann, 707 F.3d at 1123; Furnace, 705 F.3d at 1030; Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).

Plaintiff contends that the "Defendants" have refused to grant chapel access to Plaintiff and other Muslim inmates with chaplain supervision. Yet, Buddhist and Judeo-Christian groups who had chaplains and/or religious volunteers were granted access to the chapel. Plaintiff further contends that McGee specifically refused to assist groups other than Protestants and canceled Muslim services in order to conduct Protestant services.

Plaintiff's allegations are sufficient to state a cognizable equal protection claim against Defendant McGee only. Although Plaintiff alleges that Muslim inmates were denied chapel access and other religious services, Plaintiff specifically acknowledges that the denial was a result of the lack of chapel services to be supervised by a Muslim chaplain. Plaintiff fails to allege facts to demonstrate that any defendant other than McGee intentionally discriminated against him in favor of another religion. Accordingly, Plaintiff states an equal protection claim against Defendant McGee only. Because Plaintiff has previously been provided with the applicable legal standard and failed to cure the deficiency, further leave to amend is not warranted. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

////

## IV.

## RECOMMENDATION

Based on the foregoing,

IT IS HEREBY RECOMMENDED that:

1. This action proceed on Plaintiff's First Amendment, RLUIPA, and equal protection claims against the defendants set forth above;

2. All other claims and defendants be DISMISSED, with prejudice, for failure to state a cognizable claim; and

3. The matter be referred back to the Magistrate Judge for initiation of service of process.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **July 9, 2014**

_____
UNITED STATES MAGISTRATE JUDGE