1

2

3

4

5

6

7

8                              **UNITED STATES DISTRICT COURT**

9                              **EASTERN DISTRICT OF CALIFORNIA**

10

11  KAJAUNA KENYATTA IRVIN,              )   Case No.: 1:10-cv-01940-DAD-SAB (PC)
                                         )
12                    Plaintiff,         )
                                         )   FINDINGS AND RECOMMENDATIONS
13        v.                             )   DENYING DEFENDANTS' MOTION TO
                                         )   DISMISS
14  JAMES A YATES, et al.,               )
                                         )   [ECF Nos. 89, 109, 118, 120]
15                    Defendants.        )
                                         )
16  _____     )

17        Plaintiff Kajauna Kenyatta Irvin is appearing pro se in this civil rights action pursuant to 42

18  U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  The case

19  was removed from state court on October 14, 2010.

20                                        **I.**

21                           **PROCEDURAL BACKGROUND**

22        This action is proceeding on Plaintiff's claims under the First Amendment, RLUIPA, and the

23  Equal Protection Clause.

24        On April 10, 2015, Defendants Giurbino, Cate and Davis filed a motion to dismiss.  After

25  receiving several extensions of time, Plaintiff filed an opposition on September 18, 2015.  (ECF No.

26  108.)  Plaintiff also filed a motion for judicial notice and several declarations in support of his

27  opposition.  (ECF Nos. 109-115.)  Defendants filed a reply to Plaintiff's opposition and request for

28  judicial notice on September 15, 2015.  (ECF No. 116.)  On September 17, 2015, and September 25,

2015, Defendants filed motions to strike the declarations filed by Plaintiff in support of his opposition. (ECF Nos. 118, 120.)

## II.

## LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the factual allegations as true and draw all reasonable inferences in favor of the non-moving party, Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000), and in this Circuit, pro se litigants are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012); Silva v. Di Vittorio, 658 F.3d 1090, 1101 (9th Cir. 2011); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).

## III.

## DISCUSSION

### A.     Allegations of Complaint

Plaintiff is a sincere believer in the religion of Islam and actively participates in all religious activities prescribed by Islamic law.

///

///

Plaintiff was housed at Pleasant Valley State Prison (PVSP) from January 25, 2006, to January 13, 2011.  At the time of his arrival, PVSP had in its employment a full-time Muslim Chaplain named Michael A. Salaam.[1]

In September of 2006, Chaplain Salaam had Plaintiff assigned as the inmate Muslim Clerk. While employed at PVSP, Chaplain Salaam ensured that Plaintiff and other Muslim inmates received weekly chapel access for Ta'leem and Jumu'ah prayer services, as well as approviated requests to purchase and receive religious artifacts, which he ensured were issued in a reasonably timely fashion; obtained religious significant foods from outside Islamic business for the annual Ramadan and two Id banquets; obtained donations for PVSP's Islamic program; and managed a PVSP trust account with funds allotted by CDCR's religious budget for the benefit of Plaintiff and other Muslim inmates.

While Chaplain Salaam worked at PVSP, Plaintiff and other Muslim inmates had minimal problems receiving adequate religious accommodations.  Indeed, on several occasions Chaplain Salaam had obtained permission from custody supervisory staff to allow Plaintiff and other Facility A Muslim inmates to gather in the chapel for religious services, under custody supervision, during his absences from PVSP.

During Chaplain Salaam's tenure, Plaintiff and other Muslim inmates were allowed to receive chapel access for Ta'leem and Jumu'ah services during program modifications, pursuant to PVSP policy.

On November 12, 2008, Chaplain Salaam submitted PVSP officials written notification of his last day at PVSP on December 5, 2008, to begin working at Avenal State Prison (ASP) on December 8, 2008.

Prior to Chaplain Salaam's job transfer, he obtained written approval from then Facility A supervisory staff on November 14, 2008, to allow Plaintiff and other Muslim inmates to gather in the chapel, under custody staff supervision, on Thursdays for Ta'leem and Fridays for Jumu'ah during the interim of PVSP hiring a replacement Muslim Chaplain.

---

[1]  Plaintiff has used the word "Chaplain" in his complaint to refer Salaam, therefore, the court will also use this reference in its opinion.  See ¶ 10.  (ECF No. 50).

3

1    Soon after Chaplain Salaam's departure, Plaintiff and other Facility A Muslim inmates began

2    experiencing problems from PVSP staff regarding chapel access for scheduled religious services,

3    issues concerning staff refusal to sign and promptly return religious service approval lists, and

4    religious special purchase package forms, staff refusal to retrieve and promptly deliver religious

5    special purchase pack forms within a reasonably timely fashion, and staff hindrance on religious

6    accommodations for Ramada and two Ids.

7    **B.      Plaintiff's Motion for Judicial Notice**

8    As previously stated, in support of his opposition Plaintiff has filed a request for judicial notice

9    and attaches several documents.  Defendants oppose Plaintiff's request for judicial notice.

10   Initially, Plaintiff's motion for judicial notice is improper because Plaintiff failed to reference

11   any of the documents for which he requests judicial notice in his opposition.  Thus, there is no

12   showing that the documents are relevant or support Plaintiff's opposition to Defendants' motion to

13   dismiss, and it is not incumbent upon the Court to sort through all the documents to determine the

14   relevancy, if any, of such documents.  Furthermore, Plaintiff's request for judicial notice is improper

15   as it is a request for judicial notice of documents, not adjudicative facts. See Fed. R. Evid. 201.

16   Accordingly, Plaintiff's request for judicial notice is DENIED, with the exception of the March 18,

17   2010, memorandum identified below in section D.

18   **C.      Defendants' Motion to Strike Declarations Filed by Plaintiff**

19   In support of his opposition to Defendants' motion, Plaintiff filed declarations by himself and

20   other inmates.  Defendants move to strike the declarations on the ground they are untimely and are

21   irrelevant and improper.

22   Irrespective of the timeliness of the submission of Plaintiff's declarations, the declarations are

23   irrelevant and improper because they are outside the scope of the pleadings and constitute extrinsic

24   evidence, and the Court cannot consider such declarations in ruling on the instant motion to dismiss.

25   United States v. Ritchie, 342 F.3d 903, 907-908 (9th Cir. 2003).  Accordingly, the Court does not

26   consider the declarations of Plaintiff and other inmates in ruling on the instant motion to dismiss, and

27   Defendants' motion to strike the declarations should be granted.

28   ///

4

**D.     Defendants' Motion to Dismiss**

Defendants Giurbino, Cate and Davis move to dismiss the claims against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

1.     Defendant Giurbino

Defendant Giurbino is identified in the caption of the complaint as the "Director of California's Division of Adult Institutions." (ECF No. 50, at 1.)  The Court found that Plaintiff stated a cognizable claim against Defendant Giurbino for violation of RLUIPA.

Plaintiff alleges that on March 18, 2010, Defendant Giurbino and Cate promulgated CDCR's statewide Religious Meat Alternative Program, which amended Title 15 of the California Code of Regulations sections 3054 through 3054.7 to include a designated meal program category for Muslim inmates to receive halal certified meat, in addition to the previously existing religious meals for inmates of vegetarian and Jewish Kosher diets.  To this end, the Court takes judicial notice of the fact that on March 18, 2010, Giurbino issued a memorandum dated March 18, 2010, which specifically stated:

> The purpose of this memorandum is to announce the approval of amendments to the departmental regulations for food service and inmate religious diets, California Code of Regulations, Title 15, Sections 3054 through 3054.7 Religious Diet Program (Attachment A).  These amended regulations become effective on February 2, 2010.
>
> Effective immediately, adult institutions shall begin implementing the Religious Meat Alternate Program, the Vegetarian Diet Program, and the Jewish Kosher Diet Program as described in the amended regulations.  For purposes of the Religious Meat Alternate Program, Correctional Food Managers (CMFs) shall purchase halal meats, on delegation, from Highland Foods ….  Only halal meat processors who provide that they are currently certified to all halal standards will be utilized.  All adult institutions shall use the halal certified meat products and attached menus, and begin serving Religious Meat Alternate entrees as soon as possible but no later than June 28, 2010.  Updated menus with approved Religious Meat Alternate entrees for the fourth quarter are attached (Attachment B).
>
> CFMS are advised the Religious Meat Alternate Program is a religious diet program with the vegetarian option being served for breakfast and lunch.  The vegetarian option for breakfast and lunch meets halal requirements.  The Religious Meat Alternate (Chicken Patty, Beef Patty, or Turkey Frank) is only offered at the dinner meal.  CFMs are reminded that halal meat is to be stored on a separate dedicated shelf/pallet, prepared on a clean table and cooked separately from non halal meat. Halal meat shall be placed on a sheet pan and baked.  The halal meat should be cooked

5

prior to any other menu item to avoid any cross contamination.  During the serving of the meal please avoid any cross contamination.  During the serving of the meal please ensure that a dedicated utensil is used for the halal meal item to avoid any cross contamination.  Dedicate storage rooms, preparation tables, or cooking trays are not necessary for halal meat.  Staff shall follow normal sanitation procedures prior to and following the preparation of halal meat.

   Prior to implementation, please ensure that your institutions provide mandated On-The-Job (OJT) training concerning the amended regulations and the appropriate storage, preparation, and cooking of halal meat used for the Religious Meat Alternate Program.  OJT training shall be given to appropriate custody, food service staff, and inmate workers.

(ECF No. 110-1, Ex. 56.)

   The policy identified and upheld by Defendants is at the heart of Plaintiff's complaint regarding the Religious Meat Alternative Program, and Defendant Giurbino was personally involved in the alleged constitutional violations by way of Memorandum approved and issued March 18, 2010 (as referenced in Plaintiff's fourth amended complaint).[2]   Accordingly, Defendant Giurbino's motion to dismiss should be denied.

   2. <u>Defendant Cate</u>

   Defendant Cate is identified in the caption of the complaint as the former Secretary of CDCR. As with Defendant Giurbino, Plaintiff alleges that Defendant Cate promulgated CDCR's statewide Religious Meat Alternative Program, which amended Title 15 of the California Code of Regulations sections 3054 through 3054.7 to include a designated meal program category for Muslim inmates to receive halal certified meat, in addition to the previously existing religious meals for inmates of vegetarian and Jewish Kosher diets.  Plaintiff further alleges that Captain Allen rescinded a memorandum which authorized Plaintiff and other Muslim inmates chapel access for religious services under custody supervision, and implemented a policy that denies Muslim inmates chapel access during non-emergency program modifications when there is no chaplain or religious volunteer

---

[2] Court may consider exhibits and documents attached or incorporated by reference to complaint in ruling on a motion to dismiss.  <u>See</u> <u>Tellabs , Inc v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007) (a court may consider "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motion to dismiss, in particular, documents incorporated into the complaint by reference, and matters which a court may take judicial notice."); <u>see also</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688 (9th Cir. 2001).

to supervise religious services [referenced by Plaintiff as Policy-I].  (ECF No. 50 at ¶ 18.)  Plaintiff contends that in numerous written responses, Defendant Cate, among others, approved the enforcement of Policy-I.  (Id. at ¶ 21.)  "From December 2008 to January 2011, Plaintiff wrote over 20 letter and proposals to Defendants Myers, Bennett, Walker, Nash, Brazelton, Yates and Cate, concerning this issue.  No correction was made."  (Id. at ¶ 24.)

On a separate issue relating to denial of religious artifacts and packages, Plaintiff alleges that from 2008 to 2011, Plaintiff and other Muslim inmates were denied religious packages which included prayer rugs, kufi caps, beads, and prayer oils.  (ECF No. 50 at ¶ 80.)  From 2008 to 2010, Plaintiff wrote approximately 22 letters to several prison officials, including Defendant Cate.  (Id. at ¶ 85.)

In opposition to the present motion to dismiss, Plaintiff references the many appeals he filed and submits that Defendant Cate affirmed the decision to deny the appeal at the third level of review.  (ECF No. 110, ¶¶ 62, 63, 69, 72, 73, 77, 80, 83, 85, 97, 103.)  Construing Plaintiff's allegations liberally as this Court must, Plaintiff's allegations are sufficient at the pleading stage to state a cognizable claim for relief against Defendant Cate.  Assuming Plaintiff wrote several letters and appeals to Defendant Cate advising him of the policy violations and no action was taken in response, that is sufficient to state a cognizable claim for knowledge of the alleged constitutional violation.

Defendant is correct insofar as inmates lack a separate constitutional entitlement to a specific prison grievance procedure.  However, in his fourth amended complaint, Plaintiff alleges that he filed administrative appeals with Defendant Cate in which he maintained that he was not being provided an appropriate diet and denied religious artifacts and practices to comply with his religious beliefs.  The grievance procedure is the method by which Defendant Cate was notified of the alleged constitutional violation regarding his religious practices, which he failed to remedy.  Where, as here, the problem is an ongoing religious need and the request is made in an inmate appeal to remedy the ongoing problem, liability can be based on the denial of an inmate appeal, just as it could be based on the denial of a verbal request from the inmate.  Cf. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (supervisor may be liable for deliberate indifference to a serious medical need, for instance, if he or she fails to respond to a prisoner's request for help).

///

7

Based on the allegations in the complaint coupled with the notice provided by the administrative appeals, the Court finds, as stated in the prior screening order, that Plaintiff has stated a cognizable claim against Defendant Cate for subjecting him to conditions in violation of the violation of Plaintiff's rights under the free exercise clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act.  Accordingly, Defendants' motion to dismiss on this ground should be denied.

       3.    <u>Defendant Davis</u>

Defendant Davis is identified in the complaint as an Associate Warden at PVSP.  (ECF No. 50 at 2.)

Plaintiff contends that Defendant Davis, among others, approved of the religious violations in written appeal responses.  As with Defendant Davis, there is no separate constitutional entitlement to a specific prison grievance procedure.  However, in the fourth amended complaint, Plaintiff alleges that he filed several inmate appeals in which he maintained that he was not being provided an appropriate diet and denied religious artifacts and practices to comply with his religious beliefs.  Defendant Davis denied all of the inmate grievances.  The grievance procedure is the method by which Defendant Davis was notified of the alleged constitutional violation regarding his religious practices, which he failed to remedy.  Based on the allegations in the complaint coupled with the notice provided by the administrative appeals, the Court finds, as stated in the prior screening order, Plaintiff has alleged a cognizable claim against Defendant Davis for subjecting him to conditions in violation of the violation of Plaintiff's rights under the free exercise clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act.  Accordingly, Defendant Davis's motion to dismiss on this ground should be denied.[3]

**IV.**

**CONCLUSION AND RECOMMENDATIONS**

In sum, based on the allegations outlined above and at the pleading stage, Plaintiff has alleged a sufficient causal link between the actions of Defendants Giurbino, Cate, and Davis and the alleged

---

[3] Plaintiff is cautioned that all Defendants may be entitled to summary adjudication if, after discovery, it is shown that these Defendants did not have sufficient personal involvement in the underlying constitutional violation.

constitutional violations.  Indeed, at the pleading stage, the Court is required to liberally construe the pro se complaint, and Plaintiff has alleged sufficient facts to support a claim that Defendants Giurbino, Cate, and Davis "knew of the violations and failed to act to prevent them."  <u>Taylor v. List</u>, 880 F.3d 1040, 1045 (9th Cir. 1989).  Nothing in the complaint forecloses liability for Defendants based on their handling of the inmate grievances.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Plaintiff's motion for judicial notice be denied;

2.      Defendants' motion to strike the declarations submitted by Plaintiff in support of his opposition; and

3.     Defendants' motion to dismiss for failure to state a cognizable claim for relief be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __**February 8, 2016**__

UNITED STATES MAGISTRATE JUDGE

9